# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 15, 2018
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2016-SC-000552-MR

DATE 3/8/18 Kim Redmon, DC

CHRISTOPHER MELTON      APPELLANT

V.

ON APPEAL FROM CARLISLE CIRCUIT COURT
HONORABLE TIMOTHY A. LANGFORD, JUDGE
NO. 15-CR-00008

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING IN PART, REVERSING IN PART AND REMANDING

Christopher Dale Melton appeals as a matter of right from his conviction by jury and 33-year sentence arising from charges of incest, first-degree sodomy, and first-degree sexual abuse. Because the jury instructions on both the sodomy and sexual abuse counts violated the unanimity requirement, we reverse and remand Melton's sodomy and sexual abuse convictions. On remand, we also direct the trial court to dismiss the imposition of jail fees. We otherwise affirm Melton's incest conviction and the trial court's evidentiary rulings.

## I. PROCEDURAL AND FACTUAL BACKGROUND.

In May 2015, Melton was indicted on charges of incest, first-degree sodomy, and first-degree sexual abuse stemming from an incident that

occurred between Melton, then nineteen, and his then four-year-old half-sister, B.M. Melton is one of two sons of Christopher Melton and Tracy Beasley Melton, who are now divorced. Christopher is remarried to April Melton, and they have two children, the half siblings of Melton. Christopher had custody of Melton after his first divorce, but Melton lived with his paternal grandparents, Roger and Sharon Melton, from the age of twelve. He continued to live with them until the time of arrest.

On April 3, 2015, Good Friday, Christopher and April left Melton with both of his half-siblings at Roger and Sharon's home while they attended a religious service. Christopher and April dropped off the children around 5:00 p.m. and picked them up around 12:00 a.m.; B.M. was freshly bathed, despite that neither Christopher nor April had asked for her to be bathed at her grandparents' home.

Approximately eleven days later, Christopher was walking with B.M. when she told him that while she was at her grandparents' home, Melton had "licked her peepee" in the wooded area behind the house. Sharon later testified that Melton had offered to take B.M. outside while the other half sibling slept; she saw them go into the woods, and noted that they were gone for about an hour. Since B.M. had never spoken of a sexual matter before, and after B.M.'s insistence that she knew the difference between a truth and lie, Christopher took her to the Sheriff's office. After B.M. spoke with Kentucky State Trooper

2

Allison Ramsey, she scheduled the child for an interview with a Purchase Area Sexual Assault and Child Advocacy Center ("PASAC") counselor.[1]

B.M. told Trooper Ramsey, and later the PASAC counselor, that on the day in question, Melton took her outside to play since her baby brother was napping, and that they went for a walk in the woods. Once in the woods, Melton stopped at a place where no houses were visible through the trees, brushed clean a spot on the ground, and asked B.M. to pull down her pants and underwear. B.M. complied, and laid down on the ground; Melton told her to hold her genitals, and he then kneeled on the ground to lick her genitals. Afterwards, Melton helped B.M. off the ground, and assisted her in redressing and buttoning her pants. Melton then undressed himself from the waist down and told B.M. to lick his genitals. Melton told her to "go deeper," meaning go deeper on his penis. B.M. testified that Melton's penis was in her mouth, it was gross, and she almost vomited. She described Melton's penis as standing straight up. B.M. also testified that Melton grabbed his penis and shook it; he then forced her to touch it with her hands and shake it the same way he did. Melton told B.M. not to tell anyone about this incident, and to keep it a secret. Melton and B.M. then returned to their grandparents' house and ate dinner. B.M. asked for a bath, and her grandmother gave her one.

---

[1] B.M.'s preschool teacher and the director of the preschool program also contacted B.M.'s mother, April, in later April following some comments B.M. made that raised concern of sexual abuse. April told them the matter had been turned over to the proper authorities.

3

During the trial, the tapes of B.M.'s interviews with troopers and the PASAC were played for the jury. In the taped interviews, B.M. reiterated that Melton had "licked her butt,"[2] and made her "lick his butt" in the woods behind her grandparents' home. She also stated that Melton told her to keep this a secret, but she "scraped off" the secret by tell her father because she did not want to get in trouble for not telling the truth.[3]

At the close of the Commonwealth's case-in-chief and again at the close of evidence, Melton moved for a directed verdict on the incest charge, claiming that the Commonwealth had failed to prove that B.M. was a blood relation. The trial court denied Melton's motion, holding that any question of familial relationship was one for the jury. Melton also sought a first-degree sexual abuse instruction as a lesser-included offense of first-degree sodomy, which the trial court denied. During the jury instructions discussion in chambers, the trial court recognized that the sodomy instruction applied to two acts: Melton putting his mouth on B.M.'s genitals, and Melton forcing B.M. to put her mouth on his genitals, but the sexual abuse instruction applied to Melton forcing B.M. to masturbate him.

The jury found Melton guilty of all three counts: first-degree sodomy, first-degree sexual abuse, and incest. Following a penalty phase, at which

---

[2] Throughout the proceedings, B.M. referred to her genitals as her "butt," "bottom," and "pee pee." She clarified that all three denotations meant the same body part, and pointed to her genitals on the anatomically correct doll used during her testimony.

[3] B.M. clarified that "scraping off" a secret meant to divulge a secret.

4

several witnesses testified in favor of leniency for Melton, the jury recommended a 33-year sentence on the sodomy count, 10-year sentence on the sexual abuse count, and 33-year sentence on the incest count, to run concurrently for a total of 33 years' imprisonment. The trial court sentenced Melton accordingly, and also ordered Melton to pay $185 in court costs and $9,375 in jail fees to the Carlisle County Jail. This appeal follows as a matter of right.

## II. ANALYSIS.

Melton's appeal presents nine allegations of error: (A) the trial court erred in denying a directed verdict on the incest charge and unconstitutionally shifted the burden of proof; (B) the trial court erred in allowing duplicitous instructions on sodomy and sexual abuse, which violated the unanimity requirement for jury verdicts; (C) the trial court subjected Melton to double jeopardy on the charges of sodomy and sexual abuse; (D) the trial court subjected Melton to double jeopardy on the charges of incest and sodomy; (E) the trial court erred in refusing to instruct the jury on first-degree sexual abuse as a lesser-included offense of sodomy; (F) the trial court erred in allowing bolstering, vouching, and prejudicial innuendo; (G) the trial court erred in refusing to allow testimony regarding Melton's reputation at school; (H) the trial court erred in imposing court costs; and (I) the trial court erred in imposing jail fees. We will address each of these issues in turn.

5

## A. A Directed Verdict Was Not Warranted on the Incest Charge.

Melton argues that the trial court erred by denying his motion for a directed verdict on the incest charge because the Commonwealth failed to prove that Christopher was his biological father.[4] Melton argues that the trial court improperly shifted the burden of proof to him to prove that he had no familial relationship with B.M. When Melton's counsel renewed the motion for a directed verdict, the trial court again denied it, holding the issue was a one for the jury to resolve.

A rebuttable presumption of paternity exists when a child is born in wedlock. KRS[5] 406.011; *J.A.S. v. Bushelman*, 342 S.W.3d 850, 855–56 (Ky. 2011). However, as the trial court noted, this presumption is not applicable to the issue of a familial relationship under the incest statute, which is instead for the jury.[6] *See Cooper v. Commonwealth*, 374 S.W.2d 481, 482 (Ky. 1964)

---

[4] KRS 530.020(1) states: "A person is guilty of incest when he or she has sexual intercourse or deviate sexual intercourse, as defined in KRS 510.010, with a person whom he or she knows to be an ancestor, descendant, uncle, aunt, brother, or sister. The relationships referred to herein include blood relationships of either the whole or half blood without regard to legitimacy, relationship of parent and child by adoption, relationship of stepparent and stepchild, and relationship of step-grandparent and step-grandchild."

[5] Kentucky Revised Statutes.

[6] KRS 530.020 is the current incest statute, and replaced KRS 436.060. As discussed in *Dennis v. Commonwealth*, 156 S.W.3d 759, 761 (Ky. App. 2004), *review denied* March 9, 2005:

Kentucky's preceding incest statute, KRS 436.060, prohibited carnal knowledge of a person known to be the defendant's "father, mother, child, sister or brother." *Cooper v. Commonwealth*, Ky. App., 374 S.W.2d 481, 483 (1964). KRS 436.060 was replaced in 1975 by KRS 530.020, as set out in pertinent part above. The commentary to 530.020 addressed the statutory change as follows:

6

(holding the determination of parentage for an incest charge is one for the jury). In this case, the Commonwealth presented ample evidence of Melton's blood relation with B.M.: Christopher testified that Melton is his son and that Melton and B.M. are his children, thus half-siblings; Christopher testified that he was awarded custody of Melton in the divorce proceeding with Melton's mother; Sharon Melton expressly stated that her son, Christopher, is Melton's father, that she is the grandmother of both Melton and B.M., and that Melton's birth certificate lists Christopher as his father; Sharon Melton further testified that Christopher is considered to be Melton's father in the family; and during the penalty phase, Roger Melton acknowledged Melton as his grandson. The trial court properly submitted the issue of Melton's paternity to the jury, which found sufficient evidence that Melton and B.M. share a familial relationship.

As this Court clarified in *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky. 1991),

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury

---

KRS 530.020 will make some changes in former Kentucky law which prohibited only the parent-child lineal relationship, including a blood relationship either of the whole or the half blood without regard to legitimacy. KRS 530.020 extends the prohibited lineal relationship to include ancestors and descendants.

7

to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

(internal citation omitted).

Melton urges us to require the Commonwealth to produce DNA evidence to prove beyond a reasonable doubt that Christopher is his father. However, such evidence is not necessary to determine the parentage of Melton. As with all criminal cases, the Commonwealth had the duty to establish all elements of the incest charge beyond a reasonable doubt, and the Commonwealth presented a plethora of evidence to establish that Christopher is the father of both Melton and B.M. The burden did not shift to Melton to prove that he was not the son of Christopher. Rather, this issue of parentage was properly submitted to the jury, which determined that such a familial relationship existed, and therefore Melton was convicted of incest. We affirm the trial court.

## B. Duplicitous Instructions on Sodomy and Sexual Abuse Violated Unanimity Requirement.

Next, Melton argues that the jury instructions on sodomy and sexual abuse were duplicative and rendered non-unanimous verdicts. This issue is unpreserved, and thus reviewed for palpable error. RCr[7] 10.26 dictates:

A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

---

[7] Kentucky Rules of Criminal Procedure.

8

"RCr 10.26 authorizes us to reverse the trial court only upon a finding of manifest injustice. This occurs when the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be shocking or jurisprudentially intolerable." *Roe v. Commonwealth*, 493 S.W.3d 814, 820 (Ky. 2015) (internal quotations and citations omitted).

Regarding the Jury Instruction on Sodomy, Jury Instruction No. 5 reads

Sodomy in the First-degree: You, the Jury, will find the Defendant, Christopher D. Melton guilty of First-degree Sodomy under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt, all of the following:
A. That in this county on or about the 3rd day of April, 2015 and before the finding of the Indictment herein, Christopher D. Melton engaged in deviate sexual intercourse[8] with B.M.;
AND
B. That at the time of such intercourse, B.M. was less than 12 years of age.

Under this instruction, the jury was presented with two distinct instances of sodomy, that Melton orally sodomized B.M. and that Melton had her orally sodomize him, but Melton was charged with only one count of sodomy. Melton argues that this instruction violates Section 7 of the Kentucky Constitution's requirement for a unanimous verdict.

This Court has clarified that "such a scenario—a general jury verdict based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in the instruction or based on the proof—

---

[8] Jury Instruction No. 4, Definitions, defines "deviant sexual intercourse" as "any act of sexual gratification involving sex organs of one person and the mouth or anus of another; or penetrations of the anus of one person by a foreign object manipulated by another person."

9

violates the requirement of a unanimous verdict." *Johnson v. Commonwealth,* 405 S.W.3d 439, 449 (Ky. 2013). Although we agree with the Commonwealth that Melton is not entitled to dismissal of this charge, and ample evidence exists that Melton subjected B.M. to oral/genital sodomy that day, we must conclude that Melton is entitled to relief from his sodomy conviction. As in *Jenkins v. Commonwealth,* 496 S.W.3d 435, 447 (Ky. 2016), the "jury instruction addressing that charge ran afoul of the rule articulated in *Johnson v. Commonwealth,* 405 S.W.3d 439 (Ky. 2013) and *Kingrey v. Commonwealth,* 396 S.W.3d 824 (Ky. 2013) which disallows so-called duplicitous instructions."

*Jenkins* is factually similar to the case at bar, in which the victim testified that the defendant orally sodomized her and had her orally sodomize him during one incident. The defendant was charged, however, with a single count of sodomy, and the jury instruction pertaining to that charge provided only that the defendant had engaged in deviant sexual intercourse with the victim on that date. In *Jenkins,* this Court noted that the instructions were "duplicitous," i.e., not deceitful, but rather double, alleging either of two crimes in a single instruction. *Jenkins,* 496 S.W.3d at 448. We held:

> Duplicitous instructions, however, do not provide the same guarantee that all the jurors agreed as to the offense. Rather, a duplicitous instruction "allow[s] the jury to convict [the defendant] of one crime based on two separate and distinct criminal acts that violated the same criminal statute." [*Kingrey,*] 396 S.W.3d at 831. In that situation, we held, the "multiple theories" analysis is inapplicable, and the duplicitous instruction "violates the requirement of a unanimous verdict," regardless of whether sufficient evidence existed of both criminal acts. *Id.*

10

In both cases, we held that the constitutional violation amounted to so manifest an injustice as to call for relief under RCr 10.26, the palpable error rule. Extending that conclusion in *Martin v. Commonwealth,* 456 S.W.3d 1, 9–10 (Ky. 2015), we held that "all unanimous-verdict violations constitute palpable error resulting in manifest injustice."

Given the proof of two sodomies in this case, the sodomy instruction quoted above, which allowed the jury to convict on the basis of either, as though they presented merely alternative theories of a single offense, breached the rule of *Johnson* and *Kingrey.* Under *Martin,* furthermore, the breach must be deemed a palpable error. In light of this authority, Jenkins's sodomy conviction, however well justified it may appear factually, must be reversed.

*Id.* at 448–49. While reversing this conviction will not alter Melton's total sentence, reversal is mandated for this offense and its corresponding thirty-three-year sentence because the pertinent jury instruction was "duplicitous" in violation of the Kentucky Constitution's unanimous verdict requirement.[9] We remand to the trial court with directions to enter a new judgment in accordance with our decision to vacate Melton's first-degree sodomy conviction.

Regarding the sexual abuse instruction, Jury Instruction No. 6 reads:

You will find the Defendant, Christopher D. Melton, guilty of Sexual Abuse in the First-degree under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt, all of the following:
A. That in this county on or about the 3rd day of April, 2015 and before the finding of the Indictment herein, Christopher D. Melton subjected B.M. to sexual contact;
AND
B. That at the time of such intercourse, B.M. was less than 12 years of age.

_____

[9] We note that this will not alter the 33-year duration of Melton's sentence since we affirm his incest charge, for which he was also sentenced to 33 years.

11

As the Commonwealth concedes, and consistent with our discussion above, this jury instruction is improperly duplicitous. Although the Commonwealth informed the jury in its closing argument that the evidence of the masturbation act supported the sexual abuse instruction, the Commonwealth admittedly presented the jury with evidence of separate acts that could constitute sexual abuse, two instances of oral to genital contact and one of masturbatory contact. We reverse the conviction for this offense and its corresponding sentence and remand to the trial court with directions to enter a new judgment in accordance with our decision to vacate Melton's first-degree sexual abuse conviction.

## C. No Double Jeopardy Violation on Sodomy and Sexual Abuse Charges.

Melton argues that his convictions for sodomy and sexual abuse violated the constitutional and statutory prohibition against double jeopardy. Melton argues that, under the jury instructions, if the jury found him guilty of sodomy, it necessarily found him guilty of sexual abuse because one cannot engage in deviate sexual intercourse without engaging in sexual contact. This error is not preserved, however, "double jeopardy violations are treated as an exception to the general rules of preservation." *Brooks v. Commonwealth*, 217 S.W.3d 219, 221 (Ky. 2007). "[D]ouble jeopardy violations can be addressed as palpable error because the nature of such errors is to create manifest injustice." *Cardine v. Commonwealth.*, 283 S.W.3d 641, 652 (Ky. 2009). Accordingly, this double jeopardy argument is properly before us.

12

The Fifth Amendment to the United States Constitution guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]" Section 13 of the Kentucky Constitution is virtually identical and affords the same prohibition against convicting or charging a person twice for the same offense. In order to determine whether a double jeopardy violation has occurred, the *Blockburger* same-elements test is employed: "whether the act or transaction complained of constitutes a violation of two distinct statutes and, if it does, if each statute requires proof of a fact the other does not. Put differently, is one offense included within another?" *Commonwealth v. Burge*, 947 S.W.2d 805, 811 (Ky. 1996) (internal citation omitted) (adopting the test set forth in *Blockburger v. U.S.*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)). Furthermore, we must also conduct an analysis under Kentucky's statutory codification of the *Blockburger* test, KRS 505.020 et seq. *See Kiper v. Commonwealth*, 399 S.W.3d 736, 741 (Ky. 2012) (while *Blockburger* test will most often be controlling analysis, it is not the exclusive method for evaluating potential double jeopardy violation). KRS 505.020 states:

> (1) When a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense when:
> > (a) One offense is included in the other, as defined in subsection (2); or
> > (b) Inconsistent findings of fact are required to establish the commission of the offenses; or
> > (c) The offense is designed to prohibit a continuing course of conduct and the defendant's course of conduct was uninterrupted by legal process, unless the law expressly provides that specific periods of such conduct constitute separate offenses.

13

(2) A defendant may be convicted of an offense that is included in any offense with which he is formally charged. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or

(c) It differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission; or

(d) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest suffices to establish its commission.

As this Court observed regarding double jeopardy with first-degree sodomy and first-degree sexual abuse:

First-degree sexual abuse is properly classified as a lesser included offense of first-degree sodomy. *Johnson v. Commonwealth*, 864 S.W.2d 266, 277 (Ky. 1993). The distinction between the two offenses is the body part touched for purposes of sexual gratification. Sexual abuse requires "sexual contact," KRS 510.110, which means "touching of the sexual or other intimate parts of a person," KRS 510.010(7). Sodomy, on the other hand, requires "deviate sexual intercourse," KRS 510.070, which means "any act of sexual gratification involving the sex organs of one (1) person and the mouth or anus of another," KRS 510.010(1). The additional element in a sodomy offense is the specific sexual or intimate parts involved, namely, the mouth or anus.

*Mash v. Commonwealth*, 376 S.W.3d 548, 559 (Ky. 2012).

Whether Melton's convictions for sodomy and sexual abuse violate double jeopardy depends on whether the sexual abuse was incidental to the sodomy or a separate criminal act. *Hampton v. Commonwealth*, 666 S.W.2d 737 (Ky. 1984) (holding that separate acts of sexual gratification constituted separate offenses of first-degree sodomy and first-degree sexual abuse, even

14

arising from single transaction); *Benet v. Commonwealth*, 253 S.W.3d 528, 536 (Ky. 2008) (holding the argument that a person could not commit sodomy without also committing the offense of sexual abuse ignored that touching the victim's genitals through his clothes is "is an entirely separate act and offense than his orally sodomizing the victim[]"); *Banks v. Commonwealth*, 313 S.W.3d 567, 576 (Ky. 2010) (holding that "the acts of rubbing and touching, which comprise the first-degree sexual abuse convictions, and the separate and unrelated acts of sodomy, which comprise the first-degree sodomy convictions" did not violate double jeopardy). We must conclude that Melton committed two separate criminal acts: Melton forcing B.M. to touch and shake his genitals constituted sexual abuse that was not incidental to the genital to oral contact between Melton and B.M. that constituted sodomy. Each act was unrelated to the other and each done for sexual gratification. Whether they occurred close in time, or even simultaneously, is irrelevant. *Hampton*, 666 S.W.2d at 739. No constitutional or statutory double jeopardy violation occurred with these charges.

**D. No Double Jeopardy Violation on Incest and Sodomy Charges.**

Melton also argues that his convictions for sodomy and incest violate the constitutional and statutory prohibition against double jeopardy. Summarizing the *Blockburger* analysis described above, "[t]he test for determining whether a defendant can be convicted of more than one crime arising out of a single act is whether each charge requires proof of a fact that the other does not." *Johnson v. Commonwealth*, 292 S.W.3d 889, 897 (Ky. 2009) (citing *Blockburger*, 284

15

U.S. at 304, 52 S.Ct. 182). As previously stated, under KRS 505.020(1), "[w]hen a single course of conduct of a defendant may establish the commission of more than one (1) offense, he may be prosecuted for each such offense."

The crimes of sodomy and incest each require proof of a fact that the other does not. Specifically, first-degree sodomy requires proof of age, whereas incest does not; incest requires proof of a blood or familial relationship, whereas sodomy does not. *See* KRS 530.020; KRS 510.070. No constitutional or statutory double jeopardy violation occurred with these charges.

### E. Jury Instruction on First-Degree Sexual Abuse as Lesser-Included Offense of Sodomy Was Unnecessary.

Melton argues that the trial court erred in refusing to instruct the jury on first-degree sexual abuse as a lesser-included offense of sodomy. The trial court denied this instruction because it had "not heard a good way to differentiate between the sodomy charge and the stand alone charge of sexual abuse" and with this evidence, the jury could clearly could find Melton guilty of either sodomy or sexual abuse, or both charges.

As noted, sexual abuse is a lesser-included offense of sodomy. *Mash*, 376 S.W.3d at 559. However, it does not necessarily follow, as Melton argues, that he was entitled to a sexual abuse instruction as a lesser-included offense of sodomy.

> The general rule, of course, is that, if requested, a trial court must give a lesser-included offense instruction if, but only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense.

16

*Jenkins*, 496 S.W.3d at 449 (internal quotations and citations omitted). Despite the duplicitous instructional error discussed above, the trial court did not err in declining to instruct on the lesser-included offense. The Commonwealth provided consistent and ample evidence that genital/oral contact occurred between B.M. and Melton. With such sufficient evidence regarding the sodomy charge, the trial court did not err in concluding that a jury could properly find Melton guilty of the greater sodomy charge beyond a reasonable doubt. As such, the lesser-included offense instruction was unnecessary.

## F. No Bolstering, Vouching, or Prejudicial Innuendo Occurred.

Melton argues that the trial court erred in allowing "proxy witnesses" to testify to hearsay evidence that improperly bolstered B.M.'s testimony. Defense counsel filed a motion in limine, which the trial court granted, asking the court to exclude any hearsay testimony from proxy witnesses, which included social workers, case workers, counselors, law enforcement officers, school personnel, etc., including prior consistent statements unless made to counter a charge of recent fabrication. Melton asserts that the trial court implicitly denied his motion in limine since before B.M. testified, her mother and father, B.M.'s preschool teacher, and the PASAC counselor all testified to "bolster [B.M.]'s testimony and vouch for [B.M.] by testifying to their reactions and opinions regarding what [B.M.] told them." However, this KRE[10] 403 issue of bolstering

---

[10] Kentucky Rules of Evidence.

17

or vouching was not raised during the discussion of the motion in limine, nor during the trial. As such, this issue is not preserved, and we will review for palpable error.

Although bolstering and vouching are distinct concepts, Melton argues that both occurred. "Bolstering generally has to do with enhancing the validity of evidence or testimony by putting on other consistent evidence or testimony while vouching has to do with one witness, or a party's attorney, making assurances that another witness has been truthful." *Farra v. Commonwealth,* No. 2013-SC-000505-MR, 2015 WL 3631603, at *10 (Ky. June 11, 2015).

As for bolstering, Melton argues that all four witnesses enhanced the alleged validity of B.M.'s testimony by putting on additional consistent testimony and by describing the substantial steps all of the adults took, demonstrating how seriously they took B.M.'s allegations. Melton is correct that generally, "a witness's credibility may not be bolstered until it has been attacked." *Miller ex rel. Monticello Banking Co. v. Marymount Med. Ctr.,* 125 S.W.3d 274, 283 (Ky. 2004). However, the testimony at issue is not a bolstering of B.M.'s testimony. The PASAC counselor testified that B.M. met the criteria for therapy and explained her protocol for interviewing children alleging abuse, which includes the use of anatomically correct dolls; Trooper Ramsey testified about Christopher bringing B.M to the station, and how child interviews are conducted; B.M.'s preschool teacher testified that April Melton had told her the "proper authorities" were investigating this incident.

18

Furthermore, during the trial, defense counsel's own attempts on cross-examination to impeach B.M. by alleging prior inconsistent statements in her taped interviews opened the door for the entirety of the taped interviews to be played for the jury, which duplicated much of the testimony from Trooper Ramsey and the PASAC counselor. Especially in light of B.M.'s own words being played for the jury, any prior testimony describing the investigative steps or procedure of interviewing B.M. did not serve to bolster B.M.'s testimony, and definitively did not rise to the level of palpable error.

As for vouching, Melton argues that these witnesses vouched for B.M.'s truthfulness because none of these witnesses would have taken the steps they took if they did not believe B.M. had been truthful, i.e. Christopher calling Social Services and the Sheriff and taking B.M. to sexual assault therapy sessions, and the PASAC counselor testifying that B.M. met the criteria to receive therapy sessions at her organization, which has in its title "sexual assault."

As Melton concedes, no direct vouching occurred. This Court has recognized that a witness does not have to explicitly vouch for another witness's credibility in order for the testimony to be improper, but that implicit vouching is improper as well. *Bell v. Commonwealth,* 245 S.W.3d 738, 744–45 (Ky. 2008), *overruled on other grounds by Harp v. Commonwealth,* 266 S.W.3d 813 (Ky. 2008).

However, B.M. was remarkably consistent and thorough in her testimony throughout the entirety of the proceedings, and her truthfulness or believability

19

was not contested. In the first taped interview with Trooper Ramsey and in the second with the PASAC counselor, B.M. stated that Melton had "licked her butt,"[11] and that Melton had licked her four times.[12] B.M. stated this incident occurred in the woods behind her grandparents' home. In the second interview tape played for the jury, B.M. reiterated to the PASAC counselor that Melton "licked her butt," and that Melton had instructed her to spread her genitals so he could lick them, which he did, and then asked her to lick his "butt." She further explained that Melton shook his penis, and then told her to lick it; Melton made her "push it far and far" and almost made her throw up. None of the witnesses impermissibly vouched for B.M.'s testimony: they did not repeat what B.M. had told them, describe her character for truthfulness, or characterize her behavior during the investigation.[13] The trial court committed no error in allowing this testimony.

---

[11] Melton contends that the three anatomical descriptions, "butt," "bottom," and "pee pee," created inconsistent testimony. However, as previously noted, BM clarified that all three denotations meant genitals.

[12] Melton refers to this "four times" testimony as possibly meaning four occurrences in the same day. From the context of the testimony, BM was explaining that Melton licked her four times during the incident in the woods, not on four distinct occasions that day.

[13] *See Harp*, 266 S.W.3d at 823–24 (holding that even assuming indirect bolstering/vouching occurred and where the child victim's mother may have not believed the abuse occurred, testimony that does not directly speak to the child victim's character for truthfulness, but rather referenced that many cases of sexual abuse do not result in issuance of charges or sufficient evidence to charge a subject, does not rise to the level of palpable error); *Stringer v. Commonwealth*, 956 S.W.2d 883, 888 (Ky. 1997) (reiterating generally, a witness may not vouch for the truthfulness of another witness, and holding that a certified psychological counselor and cognitive therapist found the victim's responses to be "consistent" and supported by "internal logic," and that such alleviated his initial concerns that the child had been "coached" was not palpable error); *Hall v. Commonwealth*, 862 S.W.2d 321, 322–23 (Ky. 1993) (holding that in the case of a social worker, testimony of whether sexual

Melton further alleges the above testimony was such prejudicial innuendo as to outweigh any probative value. We find no instance of innuendo or inference that would have circumvented Kentucky Rules of Evidence nor resulted in manifest injustice. *Contra Moore v. Commonwealth,* 634 S.W.2d 426, 438 (Ky. 1982) (holding that despite the ruling of the trial court that part of a tape recording was inadmissible, the prosecutor twice telling the jury he "wished" they could hear the excluded portions, thus implying incriminating evidence and effectively circumventing the ruling of the trial court). Further, this testimony was relevant, and its probative value was not outweighed by the danger of undue prejudice to Melton. KRE 403. As such, no palpable error occurred.

## G. Any Error in Trial Court's Refusal to Allow Testimony Regarding Reputation at School Was Harmless.

Melton argues that the trial court erred in sustaining the Commonwealth's objection and excluding the testimony of his character witness, Debra Webb, regarding Melton's reputation for good conduct when she began to testify that her knowledge of his reputation was limited to that at school. The trial court permitted Mrs. Webb to testify on Melton's reputation as a matter of avowal.

---

abuse has occurred is impermissible, as these experts are simply not qualified to express an opinion that a person has been sexually abused); *Hellstrom v. Commonwealth,* 825 S.W.2d 612, 613–14 (Ky. 1992) (holding that testimony regarding behavioral symptoms or traits as indicative of sexual abuse (sometimes referred to as "Child Sexual Abuse Accommodation Syndrome") to bolster the prosecution's case is reversible error).

21

"[C]haracter can be proven only by evidence of general reputation or by opinion, not by specific instances of conduct." *Tamme v. Commonwealth*, 973 S.W.2d 13, 32 (Ky. 1998); KRE 405(a) (providing that "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to general reputation in the community or by testimony in the form of opinion."). KRE 608 provides:

> (a) Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Melton contends that the only relevant "community" to which he belonged was his school, and that his character for truthfulness was relevant because his denial about the incident was presented to the jury in the testimony by Trooper Ramsey.

Melton is correct that "the modern trend in evidence law is to include a child's school within the definition of community." *Vaughn v. Commonwealth*, 230 S.W.3d 559, 561 (Ky. 2007) (citing Charles T. McCormick, McCormick on Evidence, § 43 (4th ed. 2003)). However, even if the exclusion of this testimony regarding Melton's reputation for good conduct at school was in error, RCr 9.24 requires this Court to "disregard any error or defect in the proceeding that does not affect the substantial rights of the parties."

> A non-constitutional evidentiary error may be deemed harmless, . . . if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error. The inquiry is not simply whether there was enough evidence to support the

result, apart from the phase affected by the error. It is rather, even
so, whether the error itself had substantial influence. If so, or if
one is left in grave doubt, the conviction cannot stand.

*Winstead v. Commonwealth*, 283 S.W.3d 678, 688–89 (Ky. 2009) (internal

citations and quotations omitted) (adopting the test set forth in *Kotteakos v.*

*United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557

(1946)). We are hard pressed to find that Mrs. Webb's testimony that Melton

had a good reputation at school would have had such an effect on the outcome

of this case, especially in light of the ample evidence and testimony in the

record regarding the conduct perpetrated against B.M. As such, we find this to

be harmless error.

## H. Dismissal of Imposed Court Costs Is Not Warranted.

Melton argues that the trial court erred in imposing court costs in his

final judgment and sentence when he has satisfied the requirements for a poor

person under KRS 23A.205[14] and *Maynes v. Commonwealth*, 361 S.W.3d 922,

---

[14] KRS 23A.205 states:

(1) Court costs for a criminal case in the Circuit Court shall be one hundred dollars ($100).

(2) The taxation of court costs against a defendant, upon conviction in a case, shall be mandatory and shall not be subject to probation, suspension, proration, deduction, or other form of nonimposition in the terms of a plea bargain or otherwise, unless the court finds that the defendant is a poor person as defined by KRS 453.190(2) and that he or she is unable to pay court costs and will be unable to pay the court costs in the foreseeable future.

(3) If the court finds that the defendant does not meet the standard articulated in subsection (2) of this section and that the defendant is nonetheless unable to pay the full amount of the court costs, fees, or fines at the time of sentencing, then the court may establish an installment payment plan in accordance with KRS 534.020.

932–33 (Ky. 2012).[15]

In this case, the trial court entered a final judgment and sentence imposing $185 in court costs. When Melton filed his appeal, he filed a motion to proceed *in forma pauperis*. The trial court initially denied Melton's motion to proceed *in forma pauperis* since it found he had over $500 in his commissary account compared to the $150 filing fee for an appeal. Melton, through his appointed counsel, appealed this denial, and filed a notice of appeal pursuant to *Gabbard v. Lair*, 528 S.W.2d 675 (Ky. 1975). The Court of Appeals found that Melton met the criteria for indigency, and reversed and remanded to the trial court to proceed on appeal *in forma pauperis*. The trial court then submitted an order supplementing the record to show that Melton had $563 in his commissary account at the time he filed, and noted that it welcomed further direction from the Court of Appeals. In response, the Court of Appeals re-issued its initial opinion to the trial court, now stamped "Final." When Melton's counsel re-filed a Notice of Appeal, along with a Designation of Record, the trial court allowed the appeal to proceed without the $150 appellate filing fee. However, Melton is still charged the initial $185 in court costs, which he did not appeal until after the Court of Appeals determined that he could proceed *in forma pauperis* on appeal.

We addressed this very situation in *Spicer v. Commonwealth*, 442 S.W.3d

---

[15] The Commonwealth takes no position with respect to the trial court's imposition of court costs. Despite Melton's argument to the contrary, the Commonwealth's silence is not tantamount to waiver since the Commonwealth is the appellee in this case, not the appellant.

24

26, 35 (Ky. 2014), wherein we stated:

> The assessment of court costs in a judgment fixing sentencing is illegal *only* if it orders a person adjudged to be "poor" to pay costs. Thus, while an appellate court may reverse court costs on appeal to rectify an illegal sentence, we will not go so far as to remand a facially-valid sentence to determine if there was in fact error. If a trial judge was not asked at sentencing to determine the defendant's poverty status and did not otherwise presume the defendant to be an indigent or poor person before imposing court costs, then there is no error to correct on appeal. This is because there is no affront to justice when we affirm the assessment of court costs upon a defendant whose status was not determined. It is only when the defendant's poverty status has been established, and court costs assessed contrary to that status, that we have a genuine "sentencing error" to correct on appeal.

> In this case, the record does not reflect an assessment of Appellant's financial status, other than that he was appointed a public defender and permitted to proceed on appeal *in forma pauperis.* A defendant who qualifies as "needy" under KRS 31.110 because he cannot afford the services of an attorney is not necessarily "poor" under KRS 23A.205. *Maynes v. Commonwealth,* 361 S.W.3d 922, 929 (Ky.2012). Thus, simply because Appellant was represented by a public defender does not mean he is necessarily exempt from court costs. Because the trial judge's decision regarding court costs was not inconsistent with any facts in the record, the decision does not constitute error, "sentencing" or otherwise, and we affirm the imposition of court costs and the arrest fee.

Because Melton did not appeal the $185 in court costs, he waived his ability to do so now. On remand, we affirm the imposition of this $185 in court costs as imposed in Melton's final sentence and judgment.

## I. Jail Fees Imposed.

Last, Melton argues that the $9,375 in jails fees included in his sentence

constitute an unsupported, illegal fine.[16] Melton makes a two-fold argument against these jail fees: (1) since he is indigent and at all times represented by a public defender, he is not required to pay this fine for good cause shown, pursuant to KRS 534.030(4); and (2) under KRS 441.265, this fine is illegal because it has no basis other than to impose a penalty since Carlisle County failed to calculate the actual *per diem* cost per day.[17]

Although this issue is unpreserved, Melton asserts that this fine constitutes a substantive sentencing error, and should thus be reviewed de novo; in the alternative, Melton asks that we review for palpable error. Melton argues he cannot be fined under KRS 534.030(4), which states in part, "Fines required by this section shall not be imposed upon any person determined by the court to be indigent pursuant to KRS Chapter 31." However, as this Court has held, "[a]lthough included in the judgment of conviction and sentence, the jail fee was not a 'fine,' as referenced in KRS 534.030. We therefore conclude that KRS 534.030(1) does not apply to the imposition of the jail fee." *Jones v. Commonwealth,* 382 S.W.3d 22, 33 (Ky. 2011). Rather, this jail fee falls under KRS 441.265(1), which states that "[a] prisoner in a county jail shall be required by the sentencing court to reimburse the county for expenses incurred

---

[16] Melton was charged $25 per day for each of the days he was held at the Carlisle County Jail, totaling $9,375.

[17] Both parties reference *Hunt v. Commonwealth,* No. 2014-CA-001207-MR, 2016 WL 1719141 (Ky. App. Apr. 29, 2016), which was pending before this Court at the time this case was briefed. We decline to address this case because discretionary review has since been denied, and the opinion ordered not to be published.

26

by reason of the prisoner's confinement as set out in this section, except for good cause shown." (emphasis added). KRS 441.265(2) further directs:

> The jailer may adopt, with the approval of the county's governing body, a prisoner fee and expense reimbursement policy, which may include, but not be limited to, the following:
>
> 1. An administrative processing or booking fee;
>
> 2. A per diem for room and board of not more than fifty dollars ($50) per day or the actual per diem cost, whichever is less, for the entire period of time the prisoner is confined to the jail;
>
> 3. Actual charges for medical and dental treatment; and
>
> 4. Reimbursement for county property damaged or any injury caused by the prisoner while confined to the jail.

The good cause exception exempting a prisoner from paying may include an inability to pay the fees, and in setting the rate to be charged, the jailer is directed to consider "the ability of the prisoner confined to the jail to pay, giving consideration to any legal obligation of the prisoner to support a spouse, minor children, or other dependents." *Jones*, 382 S.W.3d at 33 (quoting KRS 441.265(2)(b)).

However, Carlisle County has not set forth an approved reimbursement policy for jail costs. As a result, the trial court cannot assign a $25 a day per diem for prisoners. This reimbursement policy does not comply with KRS 441.265(2), thus we find error in its imposition. As consistent with *Spicer*, 442 S.W.3d at 35, since Melton's convictions for first-degree sodomy and first-

27

degree sexual abuse are reversed and remanded to the trial court, we direct the court to dismiss these jail fees.

### III. CONCLUSION.

Based on the foregoing, we affirm Melton's sodomy conviction, and find no double jeopardy error regarding the charges for sodomy and sexual abuse nor sodomy and incest. We affirm the trial court's refusal to give jury instructions on sexual abuse as a lesser-included offense of sodomy and affirm the evidentiary rulings regarding testimony by alleged "proxy" witnesses. We find harmless error regarding the exclusion of character evidence about Melton's reputation at school. We also affirm the Carlisle Circuit Court's final sentence and judgment imposing $185 in court costs.

Although we find sufficient evidence regarding the charges of sodomy and sexual abuse, we hereby reverse both the sodomy and sexual abuse convictions because the pertinent jury instructions were "duplicitous" in violation of the Kentucky Constitution's unanimous verdict requirement, and remand the matter to the Carlisle Circuit Court for additional proceedings consistent with this Opinion. We also reverse the Carlisle Circuit Court's order requiring Melton to pay $9,375 in jail fees.

All sitting. Minton, C.J.; Hughes, VanMeter and Venters, JJ., concur. Cunningham, J. concurs in part and dissents in part by separate opinion in which Keller and Wright, JJ., join.

CUNNINGHAM, J., CONCURRING IN PART AND DISSENTING IN PART:

28

I respectfully concur in part and dissent in part. Once again, we reverse a serious sexual assault case involving a child of tender years on a hyper-technical and esoteric basis. The unanimity issue created by this Court concerning jury instructions has been a monster of our own making, gobbling up logic and common sense, while also requiring new trials and the emotional trauma they engender.

Therefore, I respectfully, but vigorously dissent the reversal of the sodomy conviction.

However, I agree with the vacating of the sexual abuse conviction. The same evidence was used to find the sexual abuse conviction, which was a lesser included offense that merged into the conviction for sodomy. Thus, Melton cannot be convicted of sexual abuse as a separate offense. *See* 1 Cooper, KENTUCKY INSTRUCTIONS TO JURIES (Criminal) § 1.16A(4) (6th ed. 2017); *Turner v. Commonwealth*, 767 S.W.2d 557, 558 (Ky. 1988).

The jury in this case unanimously found that the Appellant had engaged in sodomy with his four-year-old half-sister. There was ample evidence that on or about April 3, 2015, the Appellant both sodomized the small victim and also caused her to sodomize him. However, Appellant caught a break by being charged with only one count of sodomy. With the jury's verdict, it is clear for the world to see that all twelve believed that the Appellant committed sodomy either once or twice.

Yet, the Majority has, once again, extended the requirement for a unanimous verdict to a requirement that all twelve must designate which

29

particular act constituted the offense. The Majority once again confuse "act" with "verdict." In other words, the Majority reasons that if six jurors believe that the Appellant committed one act of sodomy and six jurors believe that the Appellant committed another act of sodomy, that does not add up to 12 people believing that the Appellant committed one act of sodomy. Not only is this strange logic—it is strange math.

Our Section 7 unanimity cases over the first 110 years of our constitution were fairly straightforward. For instance, the 1942 *Cannon* decision and the 1951 *Coomer* case dealt with recalcitrant jurors who reported being coerced into a vote, thus undermining the unanimous verdict. *Cannon v. Commonwealth*, 163 S.W.2d 15, 16 (Ky. 1942); *Coomer v. Commonwealth*, 238 S.W.2d 161, 161-62 (Ky. 1951). Even the 1978 *Wells* case held that alternative methods of proving an assault case—intentional or wanton—was not a breach of the unanimity requirement. *Wells v. Commonwealth*, 561 S.W.2d 85, 88 (Ky. 1978).

For over 110 years, we sailed along without any unanimity issues with instructions. Then, less than 10 years ago, with some of the current members of this court being complicit, we invented a new way to reverse serious cases. From then on, we have needlessly mowed down serious sex crime convictions as though we were scything fields of wheat.

We first jumped the tracks in the case of *Harp v. Commonwealth*, 266 S.W.3d 813 (Ky. 2008). Harp was charged with numerous counts of the same crime. These went to the jury with identical instructions. The jury found Harp

30

guilty of all counts. While the wording is less than clear in *Harp,* it appears we reversed that case on the unanimity issue. And we have thrown *Harp* into our growing line of unanimity cases. Then, *Miller v. Commonwealth,* 283 S.W.3d 690 (Ky. 2009), quickly followed.

*Miller* is similar to *Harp,* except for one major difference. Miller was not convicted on all identical instructions, as Harp was. The jury found Miller guilty on some of the identical instructions and not on others. *Miller* was rightly decided, I believe, for the wrong reason. It was not a unanimity problem. There was a unanimous verdict. But the defendant in that case could not review the jury findings and determine for which crimes he was convicted. Therefore, it was actually an appellate due process problem. Miller was denied his right to appeal because he did not know from the jury verdict for which crimes he had been convicted.

*Miller* dealt solely with the lack of unanimity of which *crimes* the defendant committed—not which *acts.* Out of seven identical instructions for third-degree rape, Miller was convicted on only four. It was impossible to determine for which of the crimes the jury reached unanimous verdicts. But there was no unanimity problem. The jury was unanimous in finding Miller guilty of some crimes, but not others. But which ones?

The critical issue in *Miller* and in many of our so-called "unanimity" issue cases is that the reviewing court cannot be certain which offense or offenses were committed—not whether the jury voted unanimously. So, it is not a

unanimity issue. Rather, it is a judicial review problem, which violates the right to a meaningful appeal under Section 115 of our state constitution.

In the instant case, the Appellant can clearly see that he was found guilty of one count of sodomy for his acts on April 3, 2015, in sodomizing his little sister and having her sodomize him. There was sufficient evidence for the jury to reasonably believe he did either or both.

I would respectfully submit that the reason we are only recently wrestling so much at the appellate level with the so called "unanimity question" is because we have mislabeled it. Section 115 of our state constitution states in part: "In all cases, civil and criminal, there shall be allowed as a matter of right at least one appeal to another court . . . ." Not knowing for what one is convicted deprives one of any effective means to appeal.

The jury instruction on unanimity is simple. "The *verdict of the jury* must be in writing, must be unanimous and must be signed by one of you as FOREPERSON." 1 Cooper, KENTUCKY INSTRUCTIONS TO JURIES (CRIMINAL) § 2.07A (6th ed. 2017) (emphasis added). The jury is commanded only to reach a unanimous decision on the *verdict*.

We are requiring juries to be unanimous on matters that the unanimous verdict requirement never anticipated. We can start with the weather. Juries are not required to unanimously believe the weather was the same on the day of the crime. Neither is the jury required to unanimously agree that the victim was stabbed six times as opposed to nine. If six jurors believe the victim was stabbed six times and six believe the victim was stabbed nine, all twelve

32

jurors—a unanimous jury—have decided the main issue. The victim was stabbed. In this case, the jury is not required to determine which time, or how many times, the victim was sodomized. Only that she was sodomized. Once.

Here, all twelve jurors have unanimously held that Appellant committed one offense of first-degree sodomy.

## *Palpable Error*

The error alleged in the unanimity issue on instructions in this case is unpreserved. The Majority has reviewed and reversed under the palpable error provision of RCr 10.26.

Our trial judges are being ambushed by decisions such as this one, where we so lightly deem palpable error when the error has not been preserved. We are watering down our palpable error standard with such holdings to the point that it behooves the defense lawyer not to object on jury instructions and just allow the trial court to walk, unwarned, onto the unanimity land mine.

Even if the instructions in this case are deemed error, they are a far cry from "manifest injustice." As evidenced by the present opinion, to which I dissent, we typically spend page after page doing textbook analysis of this issue with almost every jury unanimity issue we review. I strongly believe it is wholly unfair for us to stand by on this complicated matter and let our trial courts be blind-sided by such a casual application of the palpable error standard.

It is because of this strong sense of fairness to our trial judges that we have developed a long line of cases dictating that we only reverse on unpreserved error in the most drastic of cases. *See McGuire v. Commonwealth,*

33

368 S.W.3d 100, 112 (Ky. 2012) (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006)) (*Manifest injustice* is found "if the error seriously affected the 'fairness, integrity, or public reputation of the proceeding.'"); *Chavies v. Commonwealth*, 374 S.W.3d 313, 322-23 (Ky. 2012) ("A party claiming palpable error must show a *probability of a different result* or error so fundamental as to threaten a defendant's entitlement to due process of law. It should be so egregious that *it jumps off the page . . . and cries out for relief.*"); *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006) ("To discover manifest injustice, a reviewing court must plumb the depths of the proceeding . . . to determine whether the defect in the proceeding was *shocking* or jurisprudentially intolerable."); *Brock v. Commonwealth*, 947 S.W.2d 24, 28 (Ky. 1997) ("[T]he requirement of 'manifest injustice' as used in RCr 10.26 [] mean[s] that the error must have prejudiced the substantial rights of the defendant, i.e., a substantial possibility exists that the result of the trial would have been different."); *Commonwealth v. Jones*, 283 S.W.3d 665, 668 (Ky. 2009) ("An unpreserved error that is both palpable and prejudicial still does not justify relief unless the reviewing court further determines that it has resulted in a manifest injustice, unless, in other words, *the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.*'") (emphasis added throughout).

In the case before us, six jurors could believe Appellant committed sodomy in the first-degree in one way and six jurors could believe that the offense was committed in a different way. Nevertheless, a unanimous jury has

34

found Appellant guilty of one count of sodomy in the first-degree. Even the Majority infers that the Appellant could have been charged and convicted of two counts of sodomy in the first-degree. However, he was the recipient of prosecutorial beneficence by being charged and convicted of only one count of sodomy in the first-degree. Surely, this is not "palpable error" as we have traditionally envisioned it.

I dissent on the sodomy first-degree reversal. However, I concur on the criminal abuse reversal because it is a lesser-included offense and, accordingly, Appellant cannot be convicted of both crimes in this case.

Keller and Wright, JJ., join.

COUNSEL FOR APPELLANT:

Susan Jackson Balliet
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Megan K. George
Sturgill, Turner, Barker & Moloney, PLLC